UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
EDMUND SCOTTI,

CV-02-3685 (TCP)(ARL)

Plaintiff,

**MEMORANDUM
AND
ORDER**

-against-

COUNTY OF NASSAU, NASSAU COUNTY
SHERIFF'S DEPARTMENT, DONNA
ANDERSON, Sergeant, in her official and
individual capacity, BRUCE KUSKY,
Corporal, in his official and individual
capacity, PETER DUDEK, Lieutenant,
in his official and individual capacity,
DARRELL HENDERSON, Correctional
Officer, in his official and individual
capacity, and JOHN MCGUIRE, Under Sheriff,
in his official and individual capacity,

Defendant(s).
--------------------------------------------------------X
Platt, District Judge

Before this Court is a motion by defendants County of Nassau ("County"),

Nassau County Sheriff's Department ("Sheriff's Department"), Sergeant Donna

Anderson ("Anderson"), Corporal Bruce Kusky ("Kusky"), Lieutenant Peter

Dudek ("Dudek"), Correctional Officer Darrell Henderson ("Henderson"), and

Under Sheriff John McGuire ("McGuire"), (collectively "Defendants"), for

1

summary judgment against Plaintiff Edmund Scotti ("Plaintiff" or "Mr. Scotti").

For the following reasons, the Defendants' motion for summary judgment is granted in part and denied in part:

- **GRANTED** as to the equal protection claim;

- **GRANTED** as to the substantive due process claim;

- **GRANTED** as to qualified immunity;

- **GRANTED** as to the Monell claim;

- **GRANTED** as to the State disability law claim;

- **DENIED** as to the American with Disabilities Act retaliation claim; and

- **DENIED** as to the breach of contract claim.

## BACKGROUND

This case arises from a work-place injury in which the Plaintiff was put on disability leave. Plaintiff is employed as a correctional officer by the County and Sheriff's Department ("Sheriff's Department"). After working at the Sheriff's Department for approximately eleven (11) years, on December 14, 1997, an inmate at the Nassau County Correctional Facility Plaintiff stabbed the Plaintiff in the face. As a direct result of that injury, Plaintiff nearly lost sight in one eye and was left with severe headaches that continue to plague him. After one month of

2

recuperation, Plaintiff submitted a letter to the Sheriff's Department from his psychologist, Charles N. Kapotes, Ph.D. ("Kapotes"). In the letter, Kapotes stated that Mr. Scotti "can return to full duty on February 11, 1998." (Defs.' 56.1 Stmt. ¶ 23) Plaintiff returned to work on February 11, 1998.

Upon his return to work, Plaintiff was allegedly assigned to the same post and "with some of the inmates who were present when the stabbing occurred." (Amend. Compl. at ¶ 20) Since the Plaintiff had difficulty being around any inmates, he verbally requested to be reassigned to a post with "no inmate contact." (Defs.' 56.1 Stmt. at ¶ 21) As a consequence, Defendants transferred Mr. Scotti to an area within the Correctional Facility known as the "bubble" where he would have no direct inmate contact, but the inmates would be able to see him. Plaintiff continued to suffer from "severe fear, intense emotional distress, nightmares and Post Traumatic Stress Disorder" in his new post and realized he could not work as a Corrections Officer at all. (Pl.'s 56.1 Stmt. at ¶¶ 31, 32)

On September 21, 1999, one year and seven months after initially returning to work, Plaintiff returned to medical leave status, pursuant to New York General Municipal Law § 207-c, due to "the emotional and psychological stress associated with working at the facility." (Amend. Compl. at ¶ 20.) Plaintiff claimed that he continued to suffer from Post Traumatic Stress Disorder and

3

depression, both of which resulted from the injury he suffered while in the line of service.

Starting on or about October 29, 1999, Plaintiff was placed "on the disabled list" under GML § 207-c and was required to call into the Sheriff's Department Monday through Friday between 7:00 a.m. and 9:00 a.m. (Amend. Compl. at ¶ 21.) In addition, Plaintiff was required to remain in his home during normal working hours, between the hours of 9:00 a.m. and 5:00 p.m., and was required to call the Sheriff's Department to receive permission if Plaintiff wished to leave his home during that period. Under § 207-c, Plaintiff received full salary from Nassau County. (Defs.' 56.1 Stmt. ¶ 120)

Within the first week of his disability leave, Plaintiff advised Defendants that his treating physician had deemed these restrictions detrimental to Plaintiff's already infirm mental health. (Pl.'s Counter 56.1 Stmt. ¶ 135) Plaintiff alleges that he requested that the restrictions be lifted, but Defendants refused. (Pl.'s Counter 56.1 Stmt. ¶ 141) Plaintiff also contends that "[b]oth the confinement and the act of repeatedly calling in to secure 'permission' have exacerbated the symptoms of Plaintiff's Post Traumatic Stress Disorder and have led to severe depression, including suicidal ideation and preparation." (Amend. Compl. at ¶ 28.) Plaintiff further alleges that in a February 28, 2000 conversation with

4

Defendant Anderson, she told Plaintiff that she "did not care" what Plaintiff's doctor had recommended. (Amend. Compl. at ¶ 24.) Anderson allegedly further restricted Plaintiff by ordering that he obtain permission from his employer in the event that he must leave his home for any reason, even for necessary medical care. Plaintiff claims these unnecessarily burdensome restrictions amounted to Plaintiff being subjected to a virtual "house arrest." (Amend. Compl. at ¶ 28.)

On August 21, 2000, two psychologists, Thomas Lysaght, Ph.D. and Jason Komrich, Ph.D. performed an independent medical examination ("IME") of Plaintiff and issued an evaluation. The evaluation was performed at the request of the Sheriff's Department in order to get a medical opinion as to Mr. Scotti's ability to return to work. (Defs.' 56.1 Stmt. ¶ 65) In their evaluation, the doctors concluded that Plaintiff was not capable of returning to work in the foreseeable future. (Defs.' 56.1 Stmt. ¶ 52)

On June 21, 2001, pursuant to the Americans with Disabilities Act, Plaintiff filed a charge of unlawful discrimination against the County and Sheriff's Department with the New York State Division of Human Rights. On September 28, 2001, Plaintiff's treating psychiatrist, Dr. Pereira, wrote a letter detailing how Plaintiff's continued confinement at home was "medically detrimental" and that "prolonged restriction of this nature renders recovery exceedingly more difficult

5

and problematic." (Amend. Compl. at ¶ 32.)

On October 25, 2001, Nassau County Deputy County Attorney Mary Samenga advised Plaintiff's counsel that Defendants had agreed to a partial lifting of Plaintiff's restrictions, including allowing Plaintiff to leave his home for several hours at a time without obtaining prior permission. Despite granting permission for Plaintiff to leave his house, however, the amended complaint alleges that Defendants subsequently listed Plaintiff as AWOL on occasions he did in fact leave his house. Furthermore, Plaintiff claims Defendants "commenced strategic harassment, including photographing and videotaping outside plaintiff's home, in a clear attempt to intimidate plaintiff." (Amend. Compl. at ¶ 37.) Mr. Scotti also alleges that Defendants denied Plaintiff compensation and vacation time to which he was entitled.

On or about November 9, 2001, Plaintiff commenced an action for an Article 78 proceeding in the New York State Supreme Court, County of Nassau by an Order to Show Cause. As a result, on March 21, 2002, the Honorable Anthony Parga issued a Temporary Restraining Order ("TRO") preventing Defendants from engaging in the following acts:

- requiring Plaintiff to remain in his home during the entire length of his shift;

6

- conducting surveillance of any sort on Plaintiff and/or his home;

- denying Plaintiff his salary, pay and benefits;

- having any contact, directly or indirectly, with Plaintiff, except through Plaintiff's counsel or through United States Postal service delivery; and

- penalizing Plaintiff in any manner for failing to call the Sheriff's Department on a daily basis.

(Defs.' Ex. O).

On December 3, 2001 Dr. Kornrich performed another IME of the Plaintiff and issued a report of his findings. Dr. Kornrich concluded that Plaintiff must be retired from his job immediately. (Defs.' 56.1 Stmt. ¶ 95) On December 14, 2001, the Plaintiff attempted suicide. On this same date, two members of the Sheriff's Department visited Mr. Scotti at the hospital. Plaintiff alleges that the Defendants violated Judge Parga's TRO by visiting and questioning Plaintiff while he was in the hospital. (Amend. Compl. at ¶ 47) Plaintiff further claims that Defendants have retaliated against Plaintiff by unilaterally deciding to submit an application to the New York State Retirement System on his behalf, despite being advised by Plaintiff's counsel that retirement was not an acceptable option for the Plaintiff, who is 42 years of age. Plaintiff last received a paycheck from the Sheriff's Department on July 24, 2003. From this point forward, he receives full retirement benefits and retirement payments. (Defs.' 56.1 Stmt. ¶¶ 108-109)

7

*Procedural History*

On June 24, 2002, Plaintiff filed and served his original complaint on the Defendants. Subsequently, Defendants filed a motion to dismiss the Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On December 20, 2002, this Court dismissed the first motion without prejudice to renew after the Plaintiff filed an amended complaint. On January 10, 2003, Plaintiff filed an amended complaint stating claims for discrimination and retaliation pursuant to 42 U.S.C. § 12101 et seq., the American with Disabilities Act ("ADA"); violation of 42 U.S.C. § 1983 First Amendment and Fourteenth Amendment rights; violation of § 1983 by a municipality for constitutional deprivations resulting from an official policy or custom; and State law claims for discrimination based on disability and breach of contract. In the amended complaint, Plaintiff also sought punitive damages.

On April 30, 2004, the second motion to dismiss was granted in part (as to the ADA discrimination claim, § 1983 procedural due process and First Amendment claims, and punitive damages claims against the County and Sheriff's Department), and denied in part (as to the ADA retaliation claim, § 1983 substantive due process and equal protection claims, municipal liability and State law claims). Scotti v. County of Nassau, No. 02-CV-3685 (E.D.N.Y. entered

8

April 30, 2004).

Defendants have now brought the current motion for summary judgment to dismiss those claims that survived their earlier motions to dismiss.

## DISCUSSION

### A. Standard for Motion for Summary Judgment

Under a Rule 56 motion, the Defendant bears the burden of demonstrating, even after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, that there are no genuine issues of material fact, and that the Defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those which may effect the outcome of the case, and a factual dispute is genuine where a reasonable jury may return a verdict for the nonmoving party. Fed. R. Civ. P. 56; <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 255 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

Here, Defendants move for summary judgment on six (6) grounds: (i) ADA retaliation claim, (ii) § 1983 substantive due process, (iii) § 1983 equal protection claims, (iv) municipal liability, (v) New York State law claim of disability discrimination under the NYHRL, and (vi) State law claim for breach of contract.

9

## B. Applicable Law: NY General Municipal Law §207-c

General Municipal Law § 207-c ("GML § 207-c") ensures the payment of salary, wages, medical, and hospital expenses of policemen, sheriffs, undersheriffs, deputy sheriffs and corrections officers who are unable to work because they are injured or become ill in the line of duty. Such an officer is entitled to receive "the full amount of his regular salary or wages" until said disability has ceased. N.Y. Gen. Mun. Law § 207-c(1). If the disability is or becomes permanent, however, payment of the full amount of regular salary or wages will be discontinued. Id. at § 207-c(2). In the case of permanent disability, the officer may apply for a retirement allowance or pension. Id. If a permanently disabled officer does not apply for a retirement allowance or pension, an application may be made on his behalf by his employer. Id. GML § 207-c does not, however, define what constitutes a "permanent" disability.

### C. Retaliation Claim

The Americans with Disabilities Act prohibits retaliation against any individual who has asserted rights under the statute: "No person shall discriminate against any individual because such individual...made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Claims for retaliation under the ADA are

10

analyzed under the same burden-shifting test as that established for Title VII claims. Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223 (2d Cir. 2001). In order to state a *prima facie* claim of retaliation pursuant to the ADA, a plaintiff must allege that: "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." Sarno v. Douglas Eliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir. 1999) (citations omitted). Once the Plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to the Defendants to show a "legitimate, non-retaliatory reason justifying the challenged employment decision." Treglia v. Town of Manlius, 313 F.3d 713, 721 (2d Cir. 2002). Finally, if the Defendants meet this burden, the Plaintiff must point to evidence from which a reasonable jury could find that the proferred reason is merely a pretext for impermissible retaliation. Id.

In this action, there remain genuine issues of material fact and thus the Defendants' motion for summary judgment is denied as to this claim. The parties do not dispute that the Plaintiff has satisfied prongs one and two–that initiating the Article 78 proceeding was a protected activity and that Defendants were in fact aware of the proceeding. As to the third prong–that an employment action

11

adverse to the plaintiff occurred–this Court has already found that the forced

retirement constituted an adverse employment action:

> Clearly, the defendants' actions in forcing plaintiff into mandatory
> retirement, by unilaterally submitting his retirement papers,
> constitutes an adverse employment action. Although the defendants
> have a right to force the plaintiff into retirement under GML § 207-c(2),
> that right is only applicable in cases of 'permanent injury.' The
> Plaintiff specifically pled in his amended complaint that retirement
> was 'not an acceptable option' and there is no evidence at this point to
> suggest that his injuries are permanent.

Scotti v. County of Nassau, No. 02-CV-3685 (E.D.N.Y. entered April 30, 2004).

While the retirement was an adverse employment action, there remains a

question of fact as to the existence of a causal connection between the protected

activity and the adverse employment action. In other words, the Court must

decide whether the Plaintiff was permanently injured and thus permissibly forced

into retirement by the Defendants pursuant to GML § 207-c(2), or whether he was

wrongfully forced into retirement due to the Article 78 proceeding he initiated.

There is evidence to support the fact that the Defendants put the Plaintiff into

retirement because of his "permanent injury." Dr. Jason Kornrich, who performed

an independent medical examination of the Plaintiff, described the Plaintiff's

serious disability and recommended in his report that "the officer be retired from

his job immediately." (Defs.' Ex. M) The Plaintiff argues that Dr. Kornrich

never said in his report the magic words that Plaintiff was permanently

12

P-049

disabled–only that he should "be retired" immediately. Plaintiff also points out that he was examined by his treating physician, Dr. Pereira, who suggested in reports that the Plaintiff may recover from his disability if his reasonable accommodation requests were granted. (See, e.g., Pl.'s Ex. D) The Plaintiff also claims that there is circumstantial evidence that the Defendants fired him solely because of his protected activity. Specifically, the Plaintiff points out that he was forced to retire only one month after filing his Article 78 petition. Plaintiff claims that the proximity of timing between his opposition to the discrimination and the subsequent forced retirement decision raises an inference of retaliation.

Dr. Kornrich need not have specifically stated that the Plaintiff was "permanently injured" for the Sheriff's Department to have reasonably concluded that he was. However, at this juncture, the record is inconclusive as to whether Plaintiff was forced into retirement because of a permanent injury or because he initiated an Article 78 proceeding. Accordingly, summary judgment is denied as to the retaliation claim.

Moreover, even if there were no question of fact as to the Plaintiff's *prima facie* case of retaliation, there would be a disputed issue of fact as to whether the Defendants nevertheless had a legitimate business reason that was not pretextual to explain its decision to force the Plaintiff to retire. In order to survive on

13

summary judgment in the context of an ADA retaliation case, the Defendants

must show that no rational fact finder could find question with the Defendants'

legitimate business reasons stated as grounds for their adverse employment action.

Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986). At this juncture, it is

unclear whether the Defendants honestly had a reason to believe that the Plaintiff

was permanently disabled or whether they were really using this reason as a

pretext for unlawful retaliation. Mr. Scotti has been out on 207-c leave for over

two years when the first IME was performed. In that examination, Dr. Kornrich

concluded that Plaintiff "must be retired immediately" from his job. (Ex. M)

However, Mr. Scotti argues that there existed contrary medical information, such

as a note by Dr. Pereira on September 28, 2001 in which the doctor indicated that

Plaintiff may recover from his disability if the restrictions were lifted. (Ex. D)

Moreover, the Plaintiff points out that the proximity in time between the filing of

his Article 78 proceeding and the Defendants' request for an IME only three

weeks later may be evidence that the Defendants acted under a pretext. Fitzgerald

v. Henderson, 251 F.3d 345 (2d Cir. 2001) (finding retaliatory motive may be

inferred from the close timing between an employee's protected activity and an

adverse employment action).

Accordingly, since there remain questions of fact, the motion for summary

14

judgment is denied as to the retaliation claim under the ADA.

### D. Equal Protection Claim

In order to sustain a § 1983 claim under the 14th Amendment, Plaintiff must show that the Defendants have denied to him the equal protection of the laws. U.S. CONST. amend. XIV, § 1. The Fourteenth Amendment right to equal protection is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Cntr., 473 U.S. 432, 439 (1985). To establish an equal protection violation, Plaintiff must establish that the Defendants acted with purposeful discrimination toward an identifiable class. Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995)). In his complaint, however, Plaintiff does not allege that he was treated differently from anyone similarly situated. Indeed, he alleges just the opposite; he complains that he was directed to follow the same procedures as every other officer who was at home collecting GML § 207-c benefits due to an on-the-job injury.

Even though a claim will not lie here for suspect class discrimination, Plaintiff argues that he has articulated a claim for selective treatment in violation of his equal protection rights. In a selective enforcement case, an equal protection violation may be found the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the

difference in treatment. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).

Here, Plaintiff has not suffered selective treatment that was violative of his equal protection rights. Plaintiff argues that the continued enforcement of these restrictions may be seen as irrationally discriminatory given Plaintiff's particular medical condition. Plaintiff argues that the purpose of GML § 207-c is to ensure the protection and health of officers injured on the job and is not to be used as a tool to exacerbate Plaintiff's medical condition. Defendants assert that the restrictions outlined in the Policy were not applied to Plaintiff arbitrarily but were enforced against all Corrections Officers who retained benefits pursuant to GML § 207-c. In addition, the Defendants point out that the County "did everything in its power to work with Scotti and his condition." (Defs.' Mem. Sum. J. at 20) As an example, the Defendants cite to their willingness to transfer the Plaintiff to another post where he had no direct contact with inmates. When even that new position failed to alleviate Plaintiff's depression and anxiety, they granted him leave again under GML § 207-c.

The Court does not find that Plaintiff suffered selective treatment in violation of his equal protection rights. The Court does not find that the Defendants selectively treated the Plaintiff under GML § 207-c so as to further

16

harm him. If anything, the Defendants selectively treated Mr. Scotti for his own benefit and such treatment does not constitute an equal protection violation. Accordingly, the motion for summary judgment is granted as to the equal protection claim.

### E.    Substantive Due Process claim

To show a substantive due process violation, Plaintiff must show that Defendants engaged in "egregious conduct which goes beyond merely 'offending some fastidious squeamishness or private sentimentalism' and can fairly be viewed as so 'brutal' and 'offensive to human dignity' as to shock the conscience." Smith v. Half Hollow Hills Cent. Sch. Dist., 298 F.3d 168 (2d Cir. 2002) (quoting Rochin v. California, 342 U.S. 165, 172, 174 (1952)); County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) ("conduct that 'shocked the conscience' and was so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency would violate substantive due process").

Here, Plaintiff claims that the Defendants acted in an intentional and callous way by refusing to lift the Policy restrictions on Plaintiff and by "harassing" him by conducting police surveillance and videotaping his home. Plaintiff claims that these actions were particularly egregious since Defendants were advised by Plaintiff's physician that he was suffering from Post-Traumatic

17

Stress disorder due to his on-the-job injury and that house confinement and restrictions created a greater risk of suicide for him. According to the Plaintiff, with this knowledge, the Defendants should not have continued to require that he call in to work from 7 am to 9 am each morning. Moreover, the Plaintiff claims that the Defendants knew that videotaping him in his home in order to catch him violating the requirements of his § 207-c leave would further aggravate his condition. Finally, Plaintiff argues that the Defendants violated Judge Parga's TRO when certain officers "unnecessarily phoned and visited" his house. (Pl.'s Opp. Mem. Sum. J. at 20)

Defendants, however, argue that their behavior toward the Plaintiff hardly rises to the shocking levels required to constitute a substantive due process violation. They claim that they only videotaped the Plaintiff once. They also deny that they violated the Judge's TRO by visiting and phoning his house. In sum, Defendants argue that these allegations, even if true, would hardly be viewed as so brutal and offensive to human dignity as to shock the conscience.

The Court finds that even if Plaintiff's allegations were true–that the Defendants videotaped his home and visited his house once–such actions are not so brutal and offensive to human dignity so as to shock the conscience. Thus, summary judgement is granted on this claim.

18

P-049

### F. Qualified Immunity

A public official performing a discretionary function enjoys qualified immunity in a civil action for damages if his or her conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. <u>Harlow v. Fitzgerald,</u> 457 U.S. 800, 818 (1982). Here, the claimed "clearly established statutory and constitutional rights" are the Plaintiff's rights to reasonable accommodation under the Americans With Disabilities Act and the right to be free from harassment and retaliation. Because the Court has granted Defendants' motion for summary judgment as to the equal protection and substantive due process claims, it need not consider whether the Defendants enjoy qualified immunity for their acts. With respect to the ADA retaliation claim, there remain numerous issues of fact and thus the Court may not at this time entertain whether the Defendants are shielded by qualified immunity.

### G. Municipal Liability

Under § 1983, a municipality, such as Nassau County here, may be held liable for constitutional deprivations that result from an officially adopted policy or custom. <u>Monell v. Department of Soc. Serv.,</u> 436 U.S. 658, 690-91 (1978). It should be noted that although the Plaintiff's municipal liability claim in the

19

complaint survived two (2) motions to dismiss, Plaintiff has not satisfied his burden on summary judgment. Plaintiff has failed to provide any affidavits or exhibits identifying the existence or contours of such an alleged illegal policy or practice. Nonetheless, the Court may not reach the issue of whether any derivative liability flows to the County as it has granted summary judgment on the equal protection and substantive due process claims which were brought under § 1983 (see discussion supra). No constitutional deprivations have occurred and thus, the issue of municipal liability is merely academic at this point and summary judgment is denied with respect to this claim.

**H.  Pendent State Claims: Disability Discrimination and Breach of Contract**

First, Plaintiff claims he suffered discrimination based on his disability under New York Human Rights Law (NYHRL). "New York State disability discrimination claims are governed by the same standards as federal ADA claims." Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 117, n.1 (2d Cir. 2004) (citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 332, n.1 (2d Cir. 2000)). Since they are commanded by the same standards, and this Court dismissed Plaintiff's federal ADA claims on the motion to dismiss, the motion for summary judgment is granted as to the State discrimination claim.

Second, Plaintiff alleges the Defendants breached a contract when they

20

violated the terms of the March 21, 2002 Article 78 Consent Order in which the parties agreed that the Defendants would be "enjoin[ed] from taking any actions which are adverse to Petitioner's medical disability and directing [Defendants] to accommodate plaintiff's disability." (Pl.'s Ex. O) Specifically, Plaintiff claims that the Defendants violated this consent order when they refused to withdraw an involuntary retirement application they had submitted for Plaintiff in December of 2001. The Defendants respond that if the Judge had desired the Defendants to withdraw their retirement application, then he would have expressly ordered them to do so. However, since he did not, they claim that they have not violated the consent order.

Given the ambiguity of the Order with respect to the retirement application issue, summary judgment is denied on the breach of contract claim.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is **GRANTED in part** and **DENIED in part**.

SO ORDERED.

_____
Thomas C. Platt, U.S.D.J.

P-049

Dated:     Central Islip, NY
           September 12, 2005